# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# NORTHERN DIVISION

DENISE HUGHES and
BOB HUGHES,

    Plaintiffs,                           CASE NO. 04-CV-10355-BC

v.                                      DISTRICT JUDGE DAVID M. LAWSON
                                          MAGISTRATE JUDGE CHARLES BINDER

REGION VII AREA AGENCY
ON AGING, BRUCE KING,
DREW ORVOSH, BRIAN K. ELDER,
and LEARMAN, PETERS, SAROW
& MCQUILLAN, P.L.C.,

    Defendants.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSAL**
(Dkt. 12)
**LEARMAN DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT AND DISMISSAL**
(Dkt. 22)
**DEFENDANTS REGION VII AREA ON AGING, KING AND ORVOSH'S
MOTION FOR SANCTIONS**
(Dkt. 21)
**AND PLAINTIFFS' MOTION FOR ENLARGEMENT OF TIME
<u>FOR FILING RESPONSE TO MOTION FOR SANCTIONS</u>**
(Dkt. 29)

## I. RECOMMENDATIONS

For the reasons set forth below, **IT IS RECOMMENDED** that:

1. Defendants' Motion for Summary Judgment and Dismissal (Dkt. 12) be **GRANTED**;

2. Learman Defendants' Motion for Summary Judgment and Dismissal (Dkt. 22) be **GRANTED**;

3. Defendants Region VII Area on Agency, King and Orvosh's Motion for Sanctions (Dkt. 21) be **DENIED**,[1] and

4. Plaintiffs' Motion for Enlargement of Time for Filing Response to Motion for Sanctions (Dkt. 29) be **DENIED AS MOOT**.

## II. REPORT

### A. Introduction

Pending, pursuant to Orders of Reference from United States District Judge David Lawson, are the above-entitled motions. Plaintiffs have filed responses opposing each of Defendants' motions. Oral argument was heard on June 23, 2005, and the motions are now ready for Report and Recommendation.

### B. Facts and Plaintiffs' Complaint

Plaintiff Denise Hughes was employed by Defendant Region VII Area Agency on Aging from January 2002 until August 2004. In Plaintiffs' First Amended Complaint filed March 14, 2005, Plaintiff alleges that she was reprimanded and ultimately terminated from her job in retaliation for reporting to the media what she believed to be statutory and administrative rules violations committed by the Defendant Agency and Defendant Bruce King, its Executive Director. Plaintiff Denise Hughes alleges that Defendant Orvosh is the Region VII Assistant Director, who,

---

[1] In the event this recommendation is adopted, I suggest that the following pending motion should also be denied: Learman Defendants' Motion for Sanctions (Dkt. 33).

2

acting as an agent for Defendant King, notified Plaintiff Denise Hughes of her termination. Plaintiffs' complaint is filed under 42 U.S.C. § 1983, claiming that her termination was in violation of her First Amendment right to freedom of speech. Plaintiffs allege that Denise Hughes' actions in "exposing waste, ineptitude and corruption," is a compelling state interest sufficient to provide Plaintiffs protection under the First Amendment. (Pls.' First Am. Compl., Dkt. 8 at ¶ 27.) Plaintiffs seek a declaratory judgment that Plaintiff Denise Hughes' termination was unlawful and violative of the First Amendment, an injunction against "any further discrimination against the Plaintiff" as a result of the exercise of her free speech rights, damages in the form of back pay, compensatory damages, punitive damages, and attorney fees and costs under 42 U.S.C. § 1988(b).

Plaintiffs' First Amended Complaint contains four counts. Count I is filed on behalf of Plaintiff Denise Hughes and alleges the above-described violation of Plaintiff's First Amendment constitutional rights. The remaining counts are filed on behalf of Plaintiff Bob Hughes. Count II alleges a claim of defamation-libel by Plaintiff Bob Hughes against Defendant Elder based upon a communication sent to Hughes' employer, radio station WHNN. Plaintiff Bob Hughes also alleges that the law firm employing Defendant Elder, Learman, Peters, Sarow and McQuillan, PLC, is vicariously liable for Defendant Elder's actions. Count III alleges tortious interference with a contractual relationship, and Count IV alleges intentional infliction of emotional distress. At oral argument, counsel for all parties placed on the record their agreement in principle to dismiss Counts III and IV. On June 29, 2005, a stipulation to this effect was sent to Judge Lawson, and an order approving it was entered July 1, 2005. (Dkt. 35.)

C.     **Law and Analysis**

   **1. Motions for Summary Judgment and Dismissal**

   **a. Governing Law**

Defendants bring these motions pursuant to both Fed. R. Civ. P. 12(b) and Fed. R. Civ. P. 56. However, because Defendants rely upon affidavits and exhibits and not solely on the pleadings, I will treat these motions (Dkts. 12 & 22) as motions for summary judgment pursuant to Rule 56.

A motion for summary judgment pursuant to Fed. R. Civ. P. 56(c) will be granted where there is no genuine issue of material facts, and the moving party is entitled to judgment as a matter of law. All facts and inferences must be viewed in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986). The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party bears a considerable burden. The Court of Appeals for the Sixth Circuit has held that a

> District Court may grant a motion for summary judgment only if it finds from the whole record before it that there are no material facts which are in dispute. It may not make findings of disputed facts on a motion for summary judgment. The movant has the burden of showing conclusively that there exists no genuine issue as to a material fact and that the evidence together with all inferences to be drawn therefrom must be considered in the light most favorable to the party opposing the motion. The movant's papers are to be closely scrutinized while those of the opponent are to be viewed indulgently.

*Watkins v. Northwestern Ohio Tractor Pullers Assn.*, 630 F.2d 1155, 1158 (6th Cir. 1980) (citations omitted). *See also Ghandi v. Police Dep't of Detroit*, 747 F.2d 338 (6th Cir. 1984).

Summary judgment is proper when the moving party shows that the non-moving party is unable to meet its burden of proof. *Celotex*, 477 U.S. at 326. However, to defeat the motion, the non-moving party cannot rest merely on the pleadings alone. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 191 L. Ed. 2d 202 (1986). It is the plaintiff's obligation to present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Celotex*, 477 U.S. at 324.

Not every issue of fact or conflicting inference presents a genuine issue of material fact requiring the denial of summary judgment. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson*, 477 U.S. at 247-48. Irrelevant and unnecessary facts should have no bearing on a trial court's determination on a motion for summary judgment. *Id.* at 248. Accordingly, only germane facts that go to the heart of the party's suit deserve consideration. The courts will not entertain metaphysical doubts as material facts to defeat the motion. *Matsushita*, 475 U.S. at 586.

In this circuit, in order to survive a motion for summary judgment in a § 1983 action, the plaintiffs must demonstrate a genuine issue of material facts as to "two elements." *Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir. 1995). First, plaintiffs must demonstrate a genuine issue of fact as to the "'deprivation of a right secured by the Constitution or laws of the United States.'" *Id.* (quoting *Simescu v. Emmet Co. Dep't of Soc. Servs.*, 942 F. 2d 372, 374 (6th Cir. 1991)). Second, plaintiffs must show that the "'deprivation was caused by a person acting under color of state law.'" *Id.* It is this second element that is at issue in this case.

Section 1983 is triggered only by state action, and generally speaking, private persons acting on their own cannot deprive another citizen of his constitutional rights. *Lansing v. City of*

5

*Memphis*, 202 F.3d 821, 828 (6th Cir. 2000). However, private persons may violate the constitutional rights of another when their "actions so approximate state action that they may be fairly attributed to the state." *Id*.

    **b.**    **Summary of Arguments and Discussion**

    **(1)**    **Count I**

I note at the threshold that all parties agree that Defendant Region VII is a Michigan non-profit corporation which functions as an "area agency on aging" as defined in 42 U.S.C. §§ 3002(4), (17) and 3025 (a)(2)(A). (Pls.' Am. Compl., Dkt. 8 at ¶ 4; Defs.' Mot., Dkt. 12 at 2-3.)[2] The parties, however, vigorously dispute the legal implications of this status. Defendants argue that by virtue of its incorporation, which they characterize to be a private not-for-profit Michigan corporation, Region VII is a private actor within the meaning of 42 U.S.C. § 1983. As such, they argue that the actions of Region VII forming the basis for Plaintiffs' complaint are beyond the purview of 42 U.S.C. § 1983, and, as a result, Count I should be dismissed.

Plaintiffs contend that Region VII is in fact a "public" entity, or at least "quasi public" entity, and should be considered within the ambit of 42 U.S.C. § 1983. Plaintiffs assert that "[w]here a corporation exercises all its franchises for public purposes, it is a public corporation." (Pls.' Resp., Dkt. 15 at 7.) Specifically, counsel for Plaintiffs asserts that "Defendants King and Orvosh were acting under the color of state law as public employees and Region VII as a public employer while acting in their official capacities or while exercising their responsibilities pursuant to state law. In the alternative, Plaintiff asserts that Region VII's activity is state action owing to the pervasive entwinement of public entities and officials in Region VII's structure[.]" (*Id*. at 6.)

---

[2] I note that the Learman Defendants have filed a concurrence in Defendants Region VII, King and Orvash's motion for summary judgment and dismissal. (Dkt. 23.)

According to Plaintiffs, "[t]o constitute a public corporation, it is not essential that it shall exercise all the functions of government within a prescribed district. Public support or revenues and properties and public control are marks of a public corporation." (*Id.* at 8.) (citations omitted). In further support of its contentions that Defendant Region VII is a public entity, Plaintiff cites a Michigan attorney general's opinion. Plaintiffs also argue that Region VII is a state actor under both Michigan's State Ethics Act and Incompatible Offices Act.

Under the Older Americans Act (hereinafter "OAA"), 42 U.S.C. §§ 3001-3058ee, the federal government distributes funds to the states each year to support a wide range of service to "older individuals" defined by this statute as those "60 years of age or older." 42 U.S.C. § 3002(35). The OAA requires each state to designate an agency responsible for creating a formula to determine the distribution of OAA funds in the state. (*Id.*, § 3025(a)(1)(A).) That state agency must, in turn, divide the state into subdivisions known as "planning and service areas" (PSAs), and must designate an area agency on aging for each PSA. (*Id.*, § 3025(a)(1)(E).) An area agency on aging may either be a government entity or a private not-for-profit entity. *See e.g., Appalachian Agency for Senior Citizens v. Bland*, 775 F. Supp. 191, 195 (W.D. Va. 1991).

Attached to Defendants' motion for summary judgment and dismissal are the Articles of Incorporation for Region VII filed with the Michigan Department of Commerce on June 3, 1975. (Defs.' Mot., Dkt. 12, Ex. 1.) The articles are set forth on the form provided by the state of Michigan for "non-profit domestic corporations." (*Id.*) The articles begin with a preamble stating that they are "signed by the incorporators for the purpose of forming a non-profit corporation" pursuant to the provisions of Michigan law. Article II states that the corporation is "organized to fulfill the functions of an area agency on aging pursuant to Title III of the Older Amercans Act of 1965, as amended." (*Id.*) Also attached to Defendants' motion are three certificates of amendment

7

to Region VII's Articles of Incorporation. These are filed on forms provided by the state for the amendment of the Articles of Incorporation of either a profit or non-profit Michigan corporation. (*Id.*, Exs. 2-4.)

After review and consideration of the documents and arguments, I conclude first that Defendant Region VII is a private entity and not a governmental agency. From my review of the OAA, I can discern no intent on the part of Congress to convert private entities which receive funding under this Act into governmental agencies. The Act does not limit those eligible for the receipt of funds appropriated under this Act to governmental agencies alone. Rather, the statute specifically recognizes that both governmental and private entities can receive and disburse funds. I therefore conclude that Region VII's receipt of funds under the OAA does not by operation of law convert its status to that of a governmental entity.

As to whether a private non-governmental entity acting as an area agency on aging nonetheless can be considered a state actor under § 1983, it is important at the outset to clearly delineate exactly what is at issue in the case. Review of the governing statutory provisions make clear that area agencies on aging perform a myriad of functions, but only one of those functions forms the basis for Plaintiffs' assertion of state action, that of hiring, disciplining and terminating employees.

Neither party has cited any case law directly bearing on the question of whether the employment decisions made by a private non-profit entity receiving OAA funds can be considered state action for the purposes of 42 U.S.C. § 1983. After extensive research, the case most closely on point appears to be an unreported decision, *Bailey v. Area Agency on Aging of Southeast Arkansas, Inc.*, No. 95-2524, 1996 WL 102435 (8th Cir. Ark. Mar. 11, 1996) (unpublished op.). As in the instant case, the plaintiffs were employees of a private non-profit area agency on aging.

8

The plaintiffs in *Bailey* worked as van drivers, and were terminated by the defendant agency. As in this case, plaintiffs filed suit under 42 U.S.C. § 1983, alleging deprivation of constitutional rights. The district court granted summary judgment holding that the defendant area agency was not a state actor within the meaning of § 1983. On appeal, the Eighth Circuit appears to have had little difficulty agreeing with the district court's finding of no state action, and affirmed in a *per curiam* decision.

The more general and commonly accepted principles underlying the concept of state action also support this conclusion. In cases such as this, "a private party has taken the decisive step that caused the harm to the plaintiff, and the question is whether the State was sufficiently involved to treat that decisive conduct as state action." *Nat'l. Collegiate Athletic Ass'n. v. Tarkanian*, 488 U.S. 179, 192, 109 S. Ct. 454, 102 L. Ed. 2d 469 (1988). As Judge Rosen has well summarized:

> The Supreme Court and the Sixth Circuit have set forth four tests to determine whether the challenged conduct may be fairly attributable to the state in order to hold the defendants liable under section 1983. These tests are: (1) the public function test, *West v. Atkins*, 487 U.S. 42, 49-50, 108 S. Ct. 2250, 2255-2256, 101 L. Ed. 2d 40 (1988); *Flagg Bros. v. Brooks*, 436 U.S. 149, 157, 98 S. Ct. 1729, 1734, 56 L. Ed. 2d 185 (1978); (2) the state compulsion test, *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 170, 90 S. Ct. 1598, 1615, 26 L. Ed. 2d 142 (1970); (3) the joint action test, *Dennis v. Sparks*, 449 U.S. 24, 27, 101 S. Ct. 183, 186, 66 L. Ed. 2d 185 (1980); *Adickes*, *supra*, 398 U.S. at 152, 90 S. Ct. at 1605; and (4) the symbiotic relationship or nexus test, *Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 721-26, 81 S. Ct. 856, 859-62, 6 L. Ed. 2d 45 (1961).

*Canter v. Hardy*, 188 F. Supp. 2d 773, 795-96 (E.D. Mich. 2002).

> Under any of the tests, the state must be intimately involved in the challenged conduct. *Wolotsky [v. Huhn]*, 960 F.2d [1331], at 1335 [6th Cir. 1992]. The inquiry is fact specific and the presence of state action is determined on a case-by-case basis. *See Burton v. Wilmington Parking Auth.*, 365 U.S. 715, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961).

*Id*. at 796.

In the public function test:

9

> . . . a private party is deemed to be a state actor if he exercised powers which have traditionally been exclusively reserved to the state. This has been interpreted narrowly. Only functions like holding elections, *see Flagg Bros. v. Brooks*, 436 U.S. 149, 98 S. Ct. 1729, 56 L. Ed. 2d 185 (1978), exercising eminent domain, *see Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (1974), and operating a company-owned town, *see Marsh v. Alabama*, 326 U.S. 501, 505-09, 66 S. Ct. 276, 90 L. Ed. 265 (1946), fall under this category of state action. *See also, Wolotsky, supra*, 960 F.2d at 1335.

*Id*.

This record is entirely devoid of any basis which might support the application of this test. Turning to the second of the state action tests:

> The state compulsion test requires that a state exercise such coercive power or provide such significant encouragement, either overt or covert, that in law the choice of the private actor is deemed to be that of the state. *See Blum v. Yaretsky*, 457 U.S. 991, 1004, 102 S. Ct. 2777, 2785, 73 L. Ed. 2d 534 (1982); *Bier v. Fleming*, 717 F.2d 308, 311 (6th Cir.1983), *cert. denied*, 465 U.S. 1026, 104 S. Ct. 1283, 79 L. Ed. 2d 686 (1984). However, more than mere approval or acquiescence by the state in the initiatives of the private party is necessary to impose liability under this theory. *Blum*, 457 U.S. at 1004, 102 S. Ct. at 2785.

*Id*.

Again, the record is devoid of any basis to support the application of this test. Nowhere in Plaintiff's complaint is there any allegation that a state or federal government official in any way participated in the process leading to Plaintiff's termination. Attached as exhibits to the complaint and Defendants' motion are documents memorializing personnel actions taken against Plaintiff Denise Hughes. (Am. Compl., Dkt. 8, Ex. 2, 3; Defs.' Mot., Dkt 12, Ex. 5E-G.) None of these documents bear any indication that a governmental employee suggested, encouraged, or participated in the employment actions or decisions that led to Plaintiff Denise Hughes' termination.

Under the third test articulated in this circuit, state action may be found where

> . . . a private party is a willful participant in "joint action" with the State or its agents. *Dennis v. Sparks*, *supra*; *Hooks v. Hooks*, 771 F.2d 935, 943 (6th Cir. 1985). A requirement of the joint action charge is that both the public and private actors share a common unconstitutional goal to deprive the plaintiff of his constitutional rights. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1446-47 (10th Cir. 1995). Under this approach, state action may be found if a state actor has participated in or influenced the challenged action of the private party. *Id*. Just as with the other tests for state action, the mere acquiescence of a state official in the actions of a private party is not sufficient. *Id*.

*Id*.

Attempts to apply this test, I suggest, suffer the same fate as with the state compulsion test, as the record is devoid of any evidence that a state governmental official played any part in the process leading to Plaintiff Denise Hughes' termination. Moreover, for the reasons explained earlier, I cannot discern any way in which the numerous requirements of the OAA can be said to have compelled, necessitated or influenced the process which culminated in Plaintiff Denise Hughes' termination.

Plaintiffs' arguments appear to primarily implicate the last of the state action tests recognized in this circuit, that of symbiotic relationship or nexus:

> Under the symbiotic or nexus test, a plaintiff must demonstrate that there is a sufficiently close nexus between the government and the private party's conduct so that the conduct may be treated as that of the state itself. *See Jackson*, 419 U.S. at 351, 95 S. Ct. 449, 42 L. Ed. 2d 477.

*Id*.

The district courts of this circuit have the benefit of the extensive and detailed analysis of this state action test by the Sixth Circuit in *Lansing*, *supra*. I suggest that this analysis controls the application of the state action nexus test in this case, is dispositive of the arguments raised by the parties, and deserves quotation at length.

> Under the nexus test, "the action of a private party constitutes state action when there is a sufficiently close nexus between the state and the challenged action

11

of the regulated entity so that the action of the latter may be fairly treated as that of the state itself." *Wolotsky*, 960 F.2d at 1335. The cases establish no clear standard for identifying a "sufficiently close nexus." Rather, the Supreme Court reminds us that "readily applicable formulae may not be fashioned" for finding state action in civil rights cases; such a finding "can be determined only in the framework of the peculiar facts or circumstances present." *Burton v. Wilmington Parking Authority*, 365 U.S. 715, 726, 81 S. Ct. 856, 6 L. Ed. 2d 45 (1961); *see also Lugar*, 457 U.S. 922, 939, 102 S. Ct. 2744 (calling the state action determination a "necessarily fact-bound inquiry"). Although a positive test cannot be adequately formulated in the abstract, both this circuit and the Supreme Court have nevertheless identified some factors which are decidedly insufficient, by themselves, to justify a finding of a close nexus between the state and a private actor.

Consequently, it is now well-established that state regulation, even when extensive, is not sufficient to justify a finding of a close nexus between the state and the regulated entity. See, *e.g.*, *American Manufacturers*, 526 U.S. 40, 119 S.Ct. 977 (holding that despite location in state's "regulatory web," private insurer's decision to withhold payment for disputed worker's compensation claim not attributable to the state); *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982) (holding private school's personnel decisions not attributable to the state, despite "extensive regulation of the school generally"); *Blum v. Yaretsky*, 457 U.S. 991, 102 S. Ct. 2777, 73 L. Ed. 2d 534 (1982) (refusing to hold New York State responsible for nursing home's patient transfer decisions, "although it is apparent that nursing homes in New York are extensively regulated"); *Jackson*, 419 U.S. 345, 95 S. Ct. 449, 42 L. Ed. 2d 477 (refusing to find state action in electric company's decision to terminate service, notwithstanding that it was "a heavily regulated utility with at least something of a governmentally protected monopoly"); *Adams v. Vandemark*, 855 F.2d 312 (6th Cir.1988) (holding private not-for-profit corporation was not a state actor, even though subject to state and federal regulation); *Crowder v. Conlan*, 740 F.2d 447 (6th Cir.1984) (holding state was not responsible for private hospital's personnel decisions even if state regulation was "extensive and detailed").

Equally well-established is the principle that neither public funding nor private use of public property is enough to establish a close nexus between state and private actors. *See*, *e.g.*, *Rendell-Baker*, 457 U.S. 830, 102 S.Ct. 2764 (finding private school's personnel decisions not attributable to the state, despite the fact that "virtually all of the school's income was derived from government funding"); *Blum*, 457 U.S. 991, 102 S. Ct. 2777 (refusing to hold New York state responsible for nursing home's patient transfer decisions, even though the state subsidized operating costs and paid medical expenses of more than 90% of patients); *Wolotsky*, 960 F.2d at 1336 (finding private not-for-profit corporation which derived "a significant portion of its funding from the government" and which leased one of its facilities from the government at nominal cost was not a state actor); *Adams*, 855 F.2d at 316 (holding private not-for-profit corporation was not a state actor, even though funded "almost entirely by public sources" and leasing office space from the city for a

nominal fee); *Crowder*, 740 F.2d at 450, 453 (holding state was not responsible for private hospital's personnel decisions even if hospital derived "a considerable percentage of its revenues from government funding" and county was "owner and lessor of the hospital's physical plant").

The minority presence of public officials on the board of a private entity does not render the entity a state actor; nor does the mere approval or acquiescence of the state in private activity. *See*, *e.g.*, *Blum*, 457 U.S. 991, 102 S. Ct. 2777 ("Mere approval of or acquiescence in the initiatives of a private party is not sufficient to justify holding the State responsible for those initiatives under the terms of the Fourteenth Amendment"); *Jackson*, 419 U.S. 345, 95 S. Ct. 449 ("Approval by a state utility commission of such a request from a regulated utility, where the commission has not put its own weight on the side of the proposed practice by ordering it, does not transmute a practice initiated by the utility and approved by the commission into 'state action'"); *Adams*, 855 F.2d 312 (holding private not-for-profit corporation was not a state actor, even though state law required one-third of its board to be public officials, since board had no direct involvement in challenged action); *Crowder*, 740 F.2d 447 (holding state was not responsible for private hospital's personnel decisions even if two of the thirteen board members were public officials).

Finally, the cases indicate that utilization of public services by private actors does not convert private action to state action. *See American Manufacturers*, 526 U.S. at ----, 119 S. Ct. at 987 (holding that "a private party's mere use of the State's dispute resolution machinery, without the 'overt, significant assistance of state officials' cannot [properly be considered state action]"); *Edmonson v. Leesville Concrete Co., Inc.*, 500 U.S. 614, 622, 111 S. Ct. 2077, 114 L. Ed. 2d 660 (1991) ("private use of state-sanctioned private remedies or procedures does not rise, by itself, to the level of state action"); *Ellison*, 48 F.3d at 197 (holding that police assistance in lawful exercise of self-help does not convert private action to state action).

*Lansing*, 202 F.3d at 830-31.

Among the cases cited by the Sixth Circuit in *Lansing*, *Rendell-Baker v. Kohn*, 457 U.S. 830, 102 S. Ct. 2764, 73 L. Ed. 2d 418 (1982), is particularly instructive. In that case, four former teachers and a vocational counselor at a non-profit privately operated school brought a civil rights action against the school alleging violation of their constitutional rights arising out of the school's decision to discharge them. The private school was a non-profit institution specializing in the training and educating of students who had experienced difficulty in completing public high

13

schools. The school was located on private property and operated by a private board of directors. However, it received at least 90% of its operating budget through public funds. In addition, as in the instant case, the school was required to comply with numerous state and federal regulations. Moreover, the school entered into contracts with governmental bodies which referred students to the school. In spite of its close connection to state institutions, the Court nonetheless held that the four staff members had not stated a claim for relief under § 1983. In so doing, the Court held that the school's discharge of the employees was not state action. First, the Court rejected the argument that the school was a state actor because "virtually all of [its] income was derived from government funding." *Rendell-Baker*, 457 U.S. at 840. The Court stated that "[a]cts of . . . private contractors do not become acts of the government by reason of their significant or even total engagement in performing public contracts." *Id*. at 841. The Court similarly found no merit in the argument that extensive state regulation of the school was sufficient to make it a state actor because the challenged conduct, namely the employment decisions made by the school, were "not compelled or even influenced by any state regulation." *Id*. at 841. The Court went on to state that "a private entity [performing] a function which serves the public does not make its acts state action." *Id*. at 842. In dealing directly with plaintiff's claims of a "symbiotic relationship" between the school and the state, the Court observed that "[t]he school's fiscal relationship with the state [was] not different from that of many contractors performing services for the government." *Id*. at 843.

In light of all these cases, and in particular *Rendell-Baker* and *Lansing*, I suggest that it is apparent that the very factors upon which Plaintiffs rely for their assertions of state action are in fact insufficient to establish state action. These cases make clear that the receipt of government funds does not make a private entity a state actor, nor does the private entity's compliance with

14

extensive and detailed state regulation convert it to a state actor, as these regulations do "not compel[] or even influence[]", *Rendell-Baker*, 457 U.S. at 841, the conduct by Region VII's staff complained of by Plaintiffs. On this record, I am unable to find any evidence from which a jury could find that Region VII was a state actor within the meaning of 42 U.S.C. § 1983. Nor has Plaintiff established that governmental officials left any "fingerprints" on the actions and decisions which led to Plaintiff Denise Hughes' discharge. Plaintiffs, I suggest, have failed to demonstrate evidence of state involvement or to show a nexus between the decision to terminate Plaintiff Denise Hughes and any state action sufficient to require treatment of Region VII as a state actor in its discharge of Plaintiff Denise Hughes for the purposes of 42 U.S.C. § 1983. I therefore suggest that as to Count I of Plaintiffs' First Amended Complaint, Defendants' motion be granted and this count dismissed.

**(2)     Counts II, III and IV**

Defendants also move for dismissal or summary judgment of the remaining counts brought forward by Plaintiff Bob Hughes. When, as in this case, a plaintiff's federal claims have been dismissed for want of jurisdiction, all other state-law claims must be dismissed. *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1255 (6th Cir. 1996). Because I suggest that Defendants are entitled to summary judgment on all of the federal claims asserted by Plaintiff, I further suggest that this Court not entertain the remaining state law claims of defamation-libel, tortious interference with contractual relationship, and intentional infliction of emotional distress contained in Counts II-IV of Plaintiffs' First Amended Complaint. *See United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726, 86 S. Ct. 1130, 16 L. Ed. 2d 218 (1966) (noting that generally "if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.")

### 2. Motion by Defendants Region VII, King and Orvosh for Sanctions

Citing Rule 11 of the Federal Rules of Civil Procedure, Defendants Region VII, King and Orvosh move for sanctions, arguing that at the time Plaintiffs prepared the First Amended Complaint, they were aware that the claims made therein, particularly those on behalf of Plaintiff Bob Hughes, were unwarranted under existing law, could not be considered a "non-frivolous argument for the extension, modification or reversal of existing law, and that these claims were made for the improper purpose of harassment and needless increase in litigation costs. Although not directly responding to the motion, Plaintiffs have filed a motion for extension of time for filing a response, arguing that the outcome of this motion is directly dependent upon the arguments raised in the motions for summary judgment.

Rule 11 sets a series of conditions that give rise to authority on the part of the Court to impose sanctions upon one filing pleadings in federal court. Among those conditions is the assertion of claims and legal contentions that are unwarranted under existing law and an unreasonable attempt to reverse or modify that law. Defendants contend that Plaintiffs violated this condition. Defendants contend that because Region VII's status as a private actor within the meaning of § 1983 is settled as a matter of law, any allegation to the contrary constitutes sanctionable conduct. However, as pointed out above, there is relatively little case law on the exact issues raised in Defendants' summary judgment motion, and research has revealed no cases on point in the Sixth Circuit. I therefore am unable to conclude that Plaintiffs' complaint is unwarranted under existing law or is an unreasonable attempt to reverse or modify that law. As a result, I further conclude that the additional claims made by Plaintiff Bob Hughes are similarly nonsanctionable. Although clearly unpalatable to Defendants, I am unable to conclude at this

stage of the litigation that these claims were added to Plaintiffs' First Amended Complaint solely to harass Defendants.

As a result, I further suggest that Plaintiffs' Motion for enlargement of time for filing response is moot, since I am unable to discern sanctionable conduct on counsel's part in the filing of the instant complaint.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

                                               s/ *Charles E. Binder*
                                               CHARLES E. BINDER
Dated: August 15, 2005                          United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on Patrick D. Filbin and David A. Hardesty, and served in the traditional manner on Connie M. Cessante, Kim A. Higgs and Honorable David M. Lawson.


Dated: August 15, 2005                                By      s/Mary E. Dobbick
                                                                                   Secretary to Magistrate Judge Binder